THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TODD D. McGEE, Defendant-Appellant.

Second District   No. 85—0166

Opinion filed February 5, 1986.

Hal Ross Kessler and Mitchell Ex, both of Kessler & Ex, and John Thomas Moran, both of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Todd D. McGee, was found guilty of the offense of failure to dispose of a dead animal (Ill. Rev. Stat. 1983, ch. 8, par. 165) following a bench trial on stipulated evidence. He was sentenced to a six-month term of supervision and, as a condition thereof, was ordered to pay a $250 fine.

The single issue on appeal is whether the warrantless nighttime

entry and search of defendant's house by law enforcement officers was violative of the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution.

Defendant was originally charged with committing the offenses of unlawful possession of a hypodermic syringe and needle (Ill. Rev. Stat. 1983, ch. 38, par. 22—50), cruelty to animals (Ill. Rev. Stat. 1983, ch. 8, par. 703), and two counts of failure to dispose of a dead animal (Ill. Rev. Stat. 1983, ch. 8, par. 165). All charges were dismissed except one count of failure to dispose of a dead animal, a beagle dog, which was alleged to have been kept in defendant's premises without disposal for a period greater than 24 hours after the death of the animal, contrary to section 17 of the Illinois Dead Animal Disposal Act (Ill. Rev. Stat. 1983, ch. 8, par. 165). The bench trial consisted of the stipulated testimony of two State witnesses that on July 20, 1984, Officer Bieniasz found the dead body of a large beagle dog in the basement of defendant's residence in Lombard, and that defendant admitted to Don Bauer, a village employee, that he knew the dog died a week before July 20 and made no effort to dispose of the body. On this evidence the trial court found defendant guilty.

The focus of this appeal, however, concerns a pretrial motion to suppress evidence which was previously denied by the trial court. Although the motion to suppress is not contained in this record, it is apparent from the transcript of the evidentiary hearing on the motion to suppress that the motion was provided to the trial court and challenged the warrantless entry of defendant's residence by village of Lombard police officers.

Defendant testified at the pretrial hearing that on the evening of July 20, 1984, he left his residence at 6 p.m. Upon returning at 9:30 p.m., he found the police inside his house without his permission. He stated the rear door was broken whereas when he left, it had been in good condition and locked. He kept 22 beagle dogs, 39 birds, and 33 rabbits in cages in the house and the enclosed back porch. Most of the rabbits and dogs were show animals and the birds were talking varieties of parrots, caws and cockatoos. Defendant testified there was a normal animal smell inside the house, but not outside the house. The animals are fed once a day, but it is possible food and water would not be in the cages.

Officer David Bieniasz of the Lombard police department testified that on July 20 between 9 p.m. and 10 p.m. he was dispatched to defendant's residence regarding an anonymous complaint of foul odor and barking dogs which were running loose on the roof to the rear of the house. He parked in the driveway and, upon exiting his squad car,

immediately smelled a very strong foul odor of excrement emanating from the residence. After receiving no answer at the front door, Officer Bieniasz looked in a couple of windows. He observed several bird cages without birds through the first window, a dusty office area with a chair overturned and several bird cages filled with animal waste with birds without food or water in the cages through the second window, and several rabbit cages containing rabbits and hay strewn on the floor, all in total disarray, and insects flying around inside through a third window. During the four or five minutes it took to make these observations, he heard dogs barking from inside the residence the entire time. He then knocked on the rear door to the porch area and the door swung open. He stepped inside, announced his office, and received no response. The stench was overpowering and the heat inside was warmer than the outside temperature which was about 80°.

Officer Bieniasz further testified that in his 10 years' experience as a police officer he has come into contact with dead human bodies, dead animals, human corpses which emitted a stench, and sewage problems. In his opinion, he felt "there was perhaps a dead body inside" because of a combination of the odor from the inside, the disarray of the interior, and the layer of dust in the office area indicating no one had moved inside the house for a considerable length of time. He could have secured a search warrant, but he felt there might be a dead body and an immediate investigation should start. He called for a supervisor, who arrived in five minutes, and the two went inside after he again announced who he was and received no response. Upon objection by the defendant that it was beyond the scope of his motion to suppress, the officer was not allowed to testify as to what he found upon entry into the home. The motion to suppress was denied by the trial judge, who found that the belief of the officer was reasonable under all the circumstances, that there could be something other than dead animals, and that the officer would remiss in his duties if he did not investigate inside the house.

Defendant contends that the State has failed to overcome the presumption of unreasonableness that attaches to a warrantless entry and search of a residence. He further maintains that the officer testified he could have obtained a search warrant and that the "emergency" exception to the warrant requirement is inapplicable here where there was no need to offer immediate assistance to one in danger. He disputes that the facts lead to the conclusion a dead body was inside and argues that even if there had been one, guarding the residence and securing a warrant was the appropriate procedure. The State responds that under the circumstances the police were justified

in entering the residence because they were faced with an emergency situation that someone was dead or severely injured inside which justified immediate action.

The constitutional safeguards contained in section 6 of article I of the Illinois Constitution, and in the fourth amendment to the United States Constitution, do not prohibit all searches made without a warrant, but only those that are unreasonable. (*People v. Stout* (1985), 106 Ill. 2d 77, 86, 477 N.E.2d 498.) The protection of article I, section 6, of the Illinois Constitution was not intended to be more extensive than that provided at the Federal level against unreasonable searches. (See *People v. Tisler* (1984), 103 Ill. 2d 226, 241-46, 469 N.E.2d 147; *People v. Smith* (1983), 95 Ill. 2d 412, 422, 447 N.E.2d 809.) The fourth amendment does not bar police officers from making warrantless entries and searches when they "reasonably believe that a person within is in need of immediate aid." (*Mincey v. Arizona* (1978), 437 U.S. 385, 392, 57 L. Ed. 2d 290, 300, 98 S. Ct. 2408, 2413.) Warrantless entry of private premises by police for the purpose of arresting a person thought to be within or for the purpose of finding the fruits, instrumentalities, or evidence of some past crime are separately recognized from warrantless entry and search of private premises when the police reasonably believe an emergency exists which dictates the need for emergency action to provide aid to persons or property in need thereof. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 398-99, 481 N.E.2d 973; 2 W. LaFave, Search & Seizure sec. 6.6 (1978).) We are here concerned with the "emergency" exception to the warrant requirement.

■ Under the "emergency" exception to the warrant requirement, the reasonableness of the belief that an emergency, a situation requiring immediate action, exists is determined by the entirety of all the circumstances known to the police at the time of the entry. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 399, 481 N.E.2d 973; *People v. Meddows* (1981), 100 Ill. App. 3d 576, 580, 427 N.E.2d 219; see generally 2 W. LaFave, Search & Seizure sec. 6.6(a) (1978).) The general purpose, to offer assistance to a citizen possibly imperiled, not to obtain evidence of a crime, justifies such a search. *People v. Koniecki* (1985), 135 Ill. App. 3d 394, 399, 481 N.E.2d 973.

In Illinois, appellate decisions have applied the "emergency" exception to warrant requirement where police entered a residence without a warrant while investigating a possible missing person and after detecting a stench they believed came from dead body inside (*People v. Brooks* (1972), 7 Ill. App. 3d 767, 775-77, 289 N.E.2d 207), and where police investigating a report of a homicide observed from a

window flies in one of the rooms. (*People v. Lovitz* (1976), 39 Ill. App. 3d 624, 628-30, 350 N.E.2d 276.) In *People v. Brooks* (1972), 7 Ill. App. 3d 767, 289 N.E.2d 207, the court reasoned that the odor may have been caused by rotting flesh of a living person after severe burns or other injury, and the very uncertainty created by the totality of circumstances created a justification and need for the police to take immediate action. (7 Ill. App. 3d 767, 777, 289 N.E.2d 207.) In other jurisdictions, the odor of decomposing flesh or reliable information of death have been held to constitute an emergency situation sufficient to justify an immediate warrantless search of premises because the apparent death may turn out to be a barely surviving life, still to be saved. *E.g., Patrick v. State* (Del. 1967), 227 A.2d 486; *State v. Epperson* (Mo. 1978), 571 S.W.2d 260, and cases cited therein; see 2 W. LaFave, Search & Seizure sec. 6.6(a) (1978).

Here, the court below found that, under all the circumstances, the belief of Officer Bieniasz that a dead body might be inside was reasonable. Although some of the evidence on which the officer relied was disputed by defendant, such as his belief that the stench was from a human dead body rather than from some other source and that there were no signs of human activity in the house, this was properly a credibility decision within the province of the trial judge (*People v. Johnson* (1984), 123 Ill. App. 3d 1008, 1012, 463 N.E.2d 877), and we find his decision as to what the officer believed to be supported by the evidence. Moreover, a police officer's factual knowledge, based on law enforcement experience, is relevant and important. *Cf. People v. Smith* (1983), 95 Ill. 2d 412, 419-20, 447 N.E.2d 809.

Confronted with the possibility that a dead body may be inside the house, Officer Bieniasz called his supervisor who immediately came to the scene, and, after announcing who they were and again receiving no response, they entered the residence. While there is no specific testimony that the officers entered to provide aid to someone in need, as was similarly the situation in *People v. Brooks* (1972), 7 Ill. App. 3d 767, 289 N.E.2d 207, the police did not know what would confront them upon entry and this very uncertainty created a justification and a need to take immediate action. Although Bieniasz believed the stench to be from a dead body, the odor may have been caused by the rotting flesh of a living person after severe burns or other injuries. (See 7 Ill. App. 3d 767, 776, 289 N.E.2d 207.) As stated in *Wayne v. United States* (D.C. Cir. 1963), 318 F.2d 205, 212:

> "[T]he business of policemen and firemen is *to act,* not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the

calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response."

The reasonableness of the belief that a situation requiring immediate action exists is determined by the entirety of all the circumstances known to the police at the time of entry. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 399, 481 N.E.2d 973.) The criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact. (*State v. Epperson* (Mo. 1978), 571 S.W.2d 260, 265-66.) The trial court's determination on a motion to suppress evidence will be overturned only if it is manifestly erroneous. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 212, 461 N.E.2d 941.) We conclude that emergency circumstances presented in this record justified the warrantless entry into the residence, and the motion to suppress was properly denied. We note that the scope of the subsequent search inside the premises was not challenged below or on appeal.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.