BOBBIE D. TURPEN, Plaintiff-Appellant, v. THE CITY OF ST. FRAN-CISVILLE, Defendant and Third-Party Plaintiff-Appellee (James Deisher, Third-Party Defendant).

Fifth District   No. 5—85—0375

Opinion filed July 23, 1986.

Edward J. Kionka, of Winters & Garrison, of Marion, and Roscoe D. Cunningham, of Roscoe D. Cunningham, Ltd., of Lawrenceville, for appellant.

Edward Benecki and Robert M. Hopkins, both of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Bobbie D. Turpen, brought suit in the circuit court of Lawrence County against defendant, the city of St. Francisville, a municipal corporation, to recover property damages he sustained as a result of the demolition of a two-story brick building which butted directly against his property. Defendant has purchased liability insurance to compensate tort victims. (Ill. Rev. Stat. 1983, ch. 85, par. 9—103(c).) The jury found for the plaintiff and awarded him $9,500 in damages. Subsequently, the trial court granted the city's renewed motion for a directed verdict on the ground that there was no evidence that defendant authorized the actions of those responsible for the demolition. In the alternative, the trial court granted the city's motions for judgment notwithstanding the verdict and a new trial based on the same ground. Plaintiff appeals.

Plaintiff owns a lot located at 615 Main Street, St. Francisville, which was improved with a one-story building leased to Jane Burrell and utilized as a retail flower shop known as Mum's II. The Turpen building was approximately 20 feet wide by 60 feet deep. Located immediately to the west of the Turpen Building was a two-story brick building which had been purchased by James Deisher for the express purpose of demolition and salvage of saleable materials. The east wall of the Deisher building butted directly against the west wall of the Turpen building. The Deisher building was in a serious state of deterioration, and demolition thereof was essential.

In the spring of 1983, Deisher began a one-man piece-by-piece demolition of the building. Suddenly, on the evening of May 30, 1983, a partial collapse occurred. The Deisher building had slipped off its

foundation, was sagging in the center, and an I-beam was protruding onto the sidewalk. The building was leaning toward the sidewalk and threatening to fall into the street. Mayor William Padgett was advised of the situation, and he contacted Alfred Banks, the city's full-time maintenance man, and instructed him to erect barricades around the Deisher building. At approximately 9 p.m. on May 30, 1983, Banks placed barricades around the Deisher building.

Early on the morning of May 31, 1983, Deisher decided that the building was too unstable and dangerous to continue his piece-by-piece demolition and that immediate demolition was necessary. Deisher went to the mayor's house and requested the assistance of Banks and the city tractor, a 33 horsepower John Deere 1020, in pulling down the building. The mayor agreed that Deisher could use the city tractor and that Banks could assist him if he were not too busy. Additionally, the mayor asked Deisher to sign a release of liability which was prepared by the mayor. The released provided: "I JOHN DEISHER RELEASE THE CITY OF ST. FRANCISVILLE ILLINOIS FROM ANY OBLIGATIONS RESULTING FROM ANY HELP OR USE OF EQUIPMENT IN THE DEMOLITION OF BUILDINGS OWNED BY ME LOCATED ON THE CORNER OF 7TH AND MAIN." The release was signed and dated by Deisher. The date on the release was "5-30-83." Additionally, Deisher borrowed a cable that was the personal property of the mayor.

Deisher then located Banks, informed him of his discussion with the mayor and the fact that he had signed a release, and requested Banks' assistance. Banks agreed to assist Deisher so long as he did not have to attach the cable to the building or approach too close to the building. Banks accompanied Deisher to Main Street where Deisher attached one end of the cable to the center support of the building and the other end to the tractor. Banks drove the tractor. After several unsuccessful attempts to dislodge the center support, Banks moved the tractor and began to pull from a different direction. After three or four attempts, the center support came out and the building collapsed. The east wall of the two-story Deisher building crashed through the roof of the Turpen building causing extensive damage. The city has since sought the demolition of the Turpen building pursuant to the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—31—1).

Although plaintiff's complaint premised the city's liability on the negligent performance of its ministerial duty to protect the health and safety of citizens by demolishing unsafe buildings pursuant to section 11—31—1 of the Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—

31—1), it alleged that the mayor and a city employee negligently performed a duty within the scope of their respective authorities, and these allegations are sufficient to state a cause of action in common law negligence. The city argued that plaintiff had no cause of action because the city had taken no action pursuant to section 11—31—1. Additionally, the city argued that plaintiff could not rely on principles of common law tort liability because such liability was expressly limited by section 11—31—1 and section 1—4—7 (Ill. Rev. Stat. 1983, ch. 24, pars. 11—31—1, 1—4—7).

At the close of plaintiff's case, the city moved for a directed verdict on the ground that plaintiff had failed to prove that the city undertook the demolition of the Deisher building pursuant to section 11—31—1 of the Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—31—1) and was thus precluded from recovery under section 1—4—7 of the Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 1—4—7.) The city argued that there could be no cause of action against it because the city council had not authorized the demolition of the Deisher building. The trial court denied the motion and proceeded to hear evidence. At the close of all the evidence, the city renewed its motion for a directed verdict on the same ground. The trial court reserved ruling on the motion and submitted the case to the jury which returned a verdict for plaintiff and awarded him $9,500 in damages.

In a post-trial motion, the city again renewed its motion for directed verdict, and in the alternative, moved for judgment notwithstanding the verdict, and, in the second alternative, moved for a new trial. All motions were based on the ground that plaintiff had failed to prove that the city had authorized the demolition of the Deisher building. The trial court granted the city's motion for directed verdict and its alternative motions for judgment notwithstanding the verdict and for a new trial on the ground that there was "no evidence that City of St. Francisville did any of the things charged in the Complaint, because there was no proper action by the City Council authorizing same; also, the necessary requirements of Illinois Revised Statute, Chapter 24, Section 1—4—7, have not been fulfilled to permit recovery for damages to property in this case."

The sole issue presented for review is whether the trial court properly held as a matter of law that because the city council never authorized the demolition of the Deisher building, the acts of the mayor and the city maintenance man were *ultra vires* and the city is not liable for plaintiff's damages.

On appeal, the primary argument advanced by the city is that the acts of the mayor and the city's maintenance man were *ultra vires*

because the city council had not first authorized demolition of the Deisher building. Relying on sections 11—31—1 and 1—4—7, the city maintains that its liability is limited to those situations where the city council specifically authorized the demolition of a building.

■ Section 11—31—1 is a codification of the authority of a municipality as an arm of the State in the proper exercise of its police power (*City of Chicago v. Garrett* (1985), 136 Ill. App. 3d 529, 535, 483 N.E.2d 409, 413) and provides the municipality with a mechanism to demolish a building that is dangerous or unsafe at the expense of the property owner. If the property owner fails to "put such building in a safe condition or to demolish it" after proper notice, the municipality may apply to the circuit court for an order allowing the city to demolish the building and the costs thereof become a lien on the real estate "which *** is superior to all prior existing liens and encumbrances, except taxes." (Ill. Rev. Stat. 1983, ch. 24, par. 11—31—1.) The purpose of section 11—31—1 is to "provide municipalities the power to abate public nuisances which may prove detrimental to public health, safety and welfare." *City of Peru v. Bernardi* (1980), 81 Ill. App. 3d 227, 231, 401 N.E.2d 1, 3.

Section 11—31—1 does not limit the municipality's common law authority to abate a nuisance (*City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941, 945, 349 N.E.2d 532, 538), or the municipality's authority to take appropriate emergency measures when a dilapidated building poses an imminent danger to public health, safety and welfare. (*City of Chicago v. Garrett* (1985), 136 Ill. App. 3d 529, 535, 483 N.E.2d 409, 414.) "When an imminent danger to the safety of the public is posed by a structurally unsafe building, for whatever reason, the imposition of a notice requirement, a waiting period requirement, and then a requirement of applying to the circuit court for an authorization order, would have the effect of vitiating the essence of the city's inherent authority to protect the health and safety of its citizens. Every moment's delay in the removal of the danger exposes the populace to danger." (*City of Chicago v. Garrett* (1985), 136 Ill. App. 3d 529, 536, 483 N.E.2d 409, 414.) While both *Nielsen* and *Garrett* concern the city of Chicago, which is a home rule unit, the nature of the section 11—31—1 powers of the city of St. Francisville are identical.

■ Moreover, apart from any statutory provisions which might create additional remedies, plaintiff is entitled to rely on basic common law principles of liability. A city, like any other corporate entity, is vicariously liable for the torts of its officers and employees "unless a valid statute dealing with tort immunity imposes conditions upon

that liability." (*LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 705, 355 N.E.2d 70, 78.) As noted earlier, the city has waived any claim to immunity by purchasing liability insurance. Ill. Rev. Stat. 1983, ch. 85, par. 9—103(c).

In *Dragovan v. City of Crest Hill* (1983), 115 Ill. App. 3d 999, 451 N.E.2d 22, the city of Crest Hill advanced an argument similar to that of the city in the instant case. In *Dragovan*, the city argued that the actions of the city's police chief in taking home a confiscated pistol in operable condition to test fire it violated a court order, a State statute and the city's own rules and his conduct was *ultra vires* and that the city was not liable for a tort resulting from the accidental shooting of plaintiff by the police chief's son. In holding that the actions of the police chief were not *ultra vires*, the court stated that "[t]he city's argument *** does not withstand analysis. Violation of a statute does not render a municipal employee's actions *ultra vires*. Such a rule would, *de facto*, grant municipalities almost complete immunity from suit. The city refers to the statute and the court order as a limitation on its powers, as distinguished from an illegal action by its employee. This is a distinction without a difference. If we accept the city's argument, an automobile collision which resulted from a police officer driving at an excessive speed could not result in liability for the city. Arguably, absent lawful justification, a municipality has no 'power' to have its vehicles exceed speed limits. Nor could a city ever be held liable for a battery committed upon an individual by a police officer. Again, a municipality has no 'power' to subject individuals to unjustified force or violence. Yet liability is regularly imposed upon municipalities for such actions by their employees, even when those actions may also amount to a violation of a statute. [Citations.] Actions in disregard of a statute or court order does not, therefore, sever the scope of employment as a matter of law." *Dragovan v. City of Crest Hill* (1983), 115 Ill. App. 3d 999, 1001-02, 451 N.E.2d 22, 24-25.

Thus, the city's focus on section 11—31—1 of the Municipal Code is largely irrelevant. That section is intended to codify a municipality's common law powers and protects a municipality from liability to property owners whose buildings are demolished, further requiring the latter to bear the cost of demolition. It was never intended to, and does not, insulate a municipality from liability for damages incurred because of the negligence of the servants of the municipality through whom a municipality must act.

In the instant case, the Deisher building posed an imminent danger to the health and safety of the citizens of St. Francisville. In its

pleadings, the city acknowledged that the building leaned "toward the sidewalk, threatening to fall into the street" and that it was "in a dangerously weakened condition and had become a menace to public health, safety, comfort, and welfare in that said building was imminently dangerous, unsafe and a public nuisance to passers-by and to the transaction of public business in its vicinity." The immediate demolition of the Deisher building was essential to preserve the health, safety and welfare of the citizens of St. Francisville. In such an emergency situation, the city was not required to adhere strictly to section 11—31—1 notice requirements, nor was a circuit court order a necessary prerequisite to city sanctioned demolition of the Deisher building. Deisher further obviated any notice or court order requirements by requesting the assistance of the city and by signing a release. Thus, the only question is whether, absent city council authorization, the actions of the mayor and the maintenance man were beyond the scope of their authority so as to preclude city liability for damages resultant from the demolition of the Deisher building.

■■ ■ The mayor is the official head of the city (Ill. Rev. Stat. 1983, ch. 24, par. 6—4—1), and he is charged with the power and duty "[t]o enforce the laws and ordinances within the municipality" (Ill. Rev. Stat. 1983, ch. 24, par. 6—4—7(1)). He may request assistance in this duty from citizens, and he "may call out the militia to aid in suppressing riots and other disorderly conduct, or to aid in carrying into effect any law or ordinance." (Ill. Rev. Stat. 1983, ch. 24, par. 3—11—4.) The powers of the city council "shall be purely legislative, except as may be otherwise specifically provided by any other act or by any article of this code." (Ill. Rev. Stat. 1983, ch. 24, par. 6—4—6.) While section 11—31—1 provides that the "corporate authorities of each municipality may demolish *** dangerous and unsafe buildings" (Ill. Rev. Stat. 1983, ch. 24, par. 11—31—1), nothing prohibits actions taken by the mayor, nor requires city council action in an emergency situation. In fact, the authority of the mayor to order demolition of a building in imminent danger of falling into a public street is consistent with his authority to call out the militia in an emergency situation. While the exercise of power by the mayor is limited by statute, "a legislative grant carries with it, by implication, the powers necessary to make the grant effective." (*Citizens Federation v. Brown* (1985), 134 Ill. App. 3d 1054, 1057-58, 481 N.E.2d 879, 881.) Additionally, both the mayor and a city council member testified that, on a day-to-day basis, decisions made by the mayor were approved by the city council. We find that the actions of the mayor and the city maintenance man were not *ultra vires*.

■■ ■ For the directed verdict and the alternative judgment notwithstanding the verdict entered by the trial court to be upheld, the evidence for plaintiff, viewed in the aspect most favorable to plaintiff, must be such that the jury verdict could never stand and that plaintiff's assertions could never amount to a finding of liability in the city. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513.) The sole basis for the trial court's order was its finding that the plaintiff had failed to prove that the city had properly authorized the demolition of the Deisher building. Since the mayor did have the authority to approve emergency demolition of the Deisher building, there was proper action by the city and it is liable for the damages sustained by plaintiff. Plaintiff has fulfilled the requirements of section 1—4—7, which provides that "[t]he municipality shall be liable for any injury occasioned by actionable wrong to property by the removal, destruction or vacation, in whole or in part, of any unsafe *** building, by any municipal officer, board or employee charged with authority to order or execute such removal, destruction or vacation, if such removal, destruction or vacation is pursuant to valid statutes, ordinances or regulations, and if such officer, board or employee has acted in good faith, with reasonable care and probable cause." (Ill. Rev. Stat. 1983, ch. 24, par. 1—4—7.) Additionally, the second alternative judgment granting the city's motion for a new trial on the same ground is reversed.

The judgment of the circuit court of Lawrence County is reversed and the cause is remanded with directions to reinstate the jury verdict.

Reversed and remanded with directions.

KASSERMAN, P.J., and WELCH, J., concur.