**Todd McGEE, Plaintiff–Appellant,**

v.

**Donald BAUER, Individually, David Bieniasz, Individually, and Village of Lombard, Defendants–Appellees.**

**No. 90–2866.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1991.

Decided Feb. 14, 1992.

McGee's JNOV motion (attempting to reverse the jury's finding that the Village was not liable) was denied on the ground that McGee failed to move for directed verdict at the close of the evidence. McGee appeals the judge's decision to grant Bauer's JNOV motion on the basis of qualified immunity as well as the judge's decision to deny his JNOV motion with respect to the Village.

Mitchell C. Ex, Kessler & Ex, John Thomas Moran, Jr. (argued), Hal R. Kessler, Kessler & Ex, Chicago, Ill., for plaintiff-appellant.

Byron D. Knight, Mark V. Puccio, Elizabeth A. Knight (argued), Knight, Hoppe, Fanning & Knight, Des Plaines, Ill., Frank J. Koykar, Hajek, Hajek, Koykar & Heying, Westchester, Ill., for defendants-appellees.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

On July 20, 1984, a hot Friday night, a number of Village of Lombard, Illinois ("Village") public officials entered plaintiff Todd McGee's house and removed approximately 30 beagles, 39 or 40 large birds, and 49 or 50 rabbits. Later that night, Village building inspector Donald Bauer attached stickers to McGee's house declaring that the house was uninhabitable. McGee sued the Village and Bauer,[1] alleging that they violated his constitutional rights under the Fourth, Fifth and Fifteenth Amendments. A jury found Bauer liable for $10,000 but found the Village not liable. After the trial, McGee and Bauer both filed timely motions for judgment notwithstanding the verdict ("JNOV motions") pursuant to Federal Rule of Civil Procedure 50. The district court granted Bauer's JNOV motion on the basis of qualified immunity and thereby overturned the jury's verdict.

I.

In presenting the facts of this case, we must be mindful of the jury's three verdicts. The jury found for McGee only as to defendant Bauer, the Village building inspector. The jury found the Village as well as police officer David Bieniasz not liable. Therefore we view the evidence and draw reasonable inferences from the evidence in McGee's favor only as to defendant Bauer; we view other evidence, relating to the Village and Bieniasz, against McGee when relevant to the issues raised in this case. See *Henderson v. DeRobertis*, 940 F.2d 1055, 1057 (7th Cir.1991).

On July 20, 1984, Village police officer David Bieniasz responded to a telephone complaint that a dog was loose on McGee's roof and that noxious odors were emanating from his house. Bieniasz arrived at the house around 8:30 p.m. and, according to his trial testimony, smelled an odor coming from the house while still on the sidewalk in front of the house. As he approached the house, he smelled something like decaying flesh or a dead body. Bieniasz investigated the perimeter of the house and subsequently requested the assistance of his supervisor for that evening, Sergeant Cavey. Cavey joined Bieniasz, and they decided to enter the house through the back porch without a warrant because they were concerned a dead body was in the house.

The condition of McGee's house was the centrally disputed factual issue at trial.[2]

---

[1] Plaintiff's fifth amended complaint also names as defendants Michael Kalina, a Lieutenant in the Village Fire Department, and David Bieniasz, a Village police officer, neither of whom are involved in this appeal. The district court granted Kalina's motion for summary judgment on December 8, 1988. The jury found Bieniasz not liable.

[2] We believe that this evidence relates to Bieniasz, not Bauer, and therefore give stronger weight to his version of the story as the prevail-

McGee, in over two days of testimony, presented the following picture of the interior of his house. All the doors were locked, so that the police could not have entered through a door without breaking it down. Inside the house were 30 beagles, all but two of which were of show quality.[3] One beagle in McGee's basement was dead. McGee admitted that this dog had died over 2 days before the police entered his house. His reason for not disposing of the dog's body was that he needed to get an autopsy to figure out the cause of death, which was apparently an illness that other McGee dogs had contracted. One other dog with the unknown illness was placed in a cage in McGee's garage. Most of the remaining dogs were kept in cages throughout the house, although a few dogs were placed uncaged in an upstairs bedroom.

McGee's house also contained numerous rabbits and birds. McGee testified that he kept approximately 49 rabbits on his back porch in individual cages stacked 3-high. As with the beagles, these rabbits were used for breeding and showing. McGee testified that his rabbits had won a number of prizes and plaques in various shows. Approximately 40 parrots were also kept in cages throughout the house; McGee admitted that one or two of the birds may have been dead on July 20, 1984. McGee claimed that he kept his animals well-fed and in good condition. He also testified that his house was in decent, if not immaculate, condition when the police officers arrived and that Village officials in effect ransacked his house.

Defendants' witnesses painted a much different story of McGee's house on the night of July 20, 1984. Various defense witnesses made the following assertions. There were heavy layers of dust throughout the house. The kitchen sink had standing water with rusted pots and pans in it. The basement contained raw sewage (McGee testified that this was due to problems with the Village sewage system).

Hay covered the back porch, and electrical extension cords ran through the hay and straw, constituting a fire hazard. Many of the animals were without water on a hot and humid summer night. Animal waste covered the kitchen floor. What appeared to be a rodent's nest was found on the staircase landing. A rat was seen in the basement.

Representatives from the Village Fire Department, the Illinois Department of Agriculture, and Bauer, the Village building inspector, soon joined Officers Bieniasz and Cavey at McGee's house. They took all the animals (except the dead dog) to a local animal shelter. The fire inspector directed that the house's electricity and gas be shut off. Bauer posted stickers on the front and back doors of McGee's house indicating that the house was uninhabitable and that no one was to enter it. McGee, who had returned to his home around 9:30 p.m., was arrested at about 11:15 and taken to the police station where he was handcuffed to a bench overnight.

McGee was released from the police station the next morning, July 21. He was told not to go back to his house, but upon advice of his attorney he returned to his house on both July 21 and July 22 to take pictures of its interior. On July 27 Village authorities permitted him to return to his home, and on August 1 or 2 his utilities were reconnected. On August 9, McGee was charged with unlawful possession of a hypodermic syringe, cruelty to animals, and failure to dispose of a dead animal within 24 hours. The syringe possession and cruelty to animals charges, however, were later dropped. McGee was convicted of the failure to dispose of a dead animal within 24 hours, and his conviction was upheld on appeal. See *People v. McGee*, 140 Ill.App.3d 677, 95 Ill.Dec. 218, 489 N.E.2d 439 (2d Dist.1986). The Illinois Appellate court held that the Village police officers' search of his house without a warrant did not violate the Fourth Amendment

---

ing party at trial. We note that Bieniasz, unlike Bauer, was one of the police officers alleged to have "caused an excessive amount of damage to the dwelling * * *." 5th Amended Complaint, ¶ 13.

3. McGee introduced into evidence numerous photographs of his beagles wearing ribbons won at dog shows.

733

because the officers reasonably believed that an emergency existed.

## II.

McGee first argues that the district court erred by denying his JNOV motion aiming to impose liability on the Village notwithstanding the jury's verdict. A district court's decision to deny a JNOV motion is reviewed *de novo*. *Matlock v. Barnes*, 932 F.2d 658, 663 (7th Cir.1991).

McGee contends that the evidence presented at trial clearly shows that Bauer was a policymaker, and that the jury verdict against Bauer therefore means that the Village is also liable. The Village would be liable under 42 U.S.C. § 1983 if its officials acted in accordance with the municipality's policy or custom. *St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 922–23, 99 L.Ed.2d 107 (1988). Bauer's decision to declare McGee's house uninhabitable, according to McGee, is a policymaking act.

The jury considered the issue of the Village's liability in light of the following instructions:

The Village of Lombard may only be held liable if a constitutional violation is proven and it is also proven by a preponderance of the evidence that the constitutional violation was caused or committed pursuant to the act of a policy-making official. Plaintiff claims Donald Bauer is a policy-making official. The Village of Lombard denies Donald Bauer is a policy-making official.

A policy-maker is a person that possesses final authority to establish municipal policy with respect to action ordered or action taken.

The Village of Lombard is liable if a policy-making official taken in his capacity as a policy-maker has violated plaintiff's constitutional rights.

The jury declined to impose liability on the Village. Thus the jury either decided that Bauer was not a policymaking official or was not acting in that capacity when he violated plaintiff's rights. McGee argued in his JNOV motion and argues on appeal that a finding that Bauer was not a policy-

maker would be against the manifest weight of the evidence.

Under *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), whether a local official is a policymaker is a question of law to be decided by the trial judge before the case is submitted to a jury. *Id.* at 737, 109 S.Ct. at 2723. The district court therefore should not have let the policymaker question go to the jury. However, neither party raised the issue of *Jett* during the proceedings below, and the district judge was apparently not aware of the case. Indeed, neither party cited the case in their briefs before this court. McGee brought the case to this Court's attention after his briefs were filed as "supplemental authority" to his argument that the jury's decision was against the manifest weight of the evidence. It is too late to raise the argument that the judge should have decided the policymaker question since it was not made below. Moreover, *Jett* cannot be used to supplement McGee's sufficiency argument; *Jett*'s holding that the judge, not the jury, should make the policymaker decision has nothing to do with the sufficiency of the evidence.

We do not reach the merits of whether Bauer was a policymaker because we conclude that the district court properly denied McGee's JNOV motion on the procedural basis that McGee did not make a corresponding directed verdict motion. See Fed.R.Civ.P. 50. McGee claims that at the close of trial he did make an oral directed verdict motion on the issue of Bauer's status as a policymaker. It is undisputed that McGee made such a motion at the close of his case, before the defendant presented evidence, which the trial court denied as premature. The transcript reveals the following colloquy at the end of the trial:

THE COURT: Let's talk first for the motions for directed verdict. Do you have new motions or are you going to renew your earlier ones?

[Defendants' Attorney]: I'm renewing my earlier ones, but I wanted to add in the fact that it is now evidence [sic] that

Donald Bauer was not a policymaker
* * *.

THE COURT: Wasn't there conflicting testimony, though, from his deposition?

[McGee's Attorney]: There was conflicting testimony from his deposition. There was also some conflicting testimony from some of the other individuals. * * *

THE COURT: Well, I'm inclined to let that issue go to the jury.

Tr. at 17–18.

■ It is a question of fact whether an oral motion for directed verdict was "made at the close of all the evidence" as required for a JNOV motion under Federal Rule of Civil Procedure 50(b). We therefore may overturn the trial court's conclusion that McGee did not make a motion only if that conclusion was clearly erroneous. See *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1268 (7th Cir.1991) (citing Federal Rule of Civil Procedure 52(a)). Although the discussion quoted above is somewhat unclear, McGee, unlike Bauer, never expressly renewed his earlier directed verdict motions. Furthermore, McGee's arguments on the policymaking point were in response to the Village's own motion for directed verdict on the basis that Bauer was *not* a policymaker. The trial court's finding that Bauer did not make the required directed verdict motion is not clearly erroneous, and therefore its denial of McGee's JNOV motion is affirmed.

## III.

■ McGee next argues that the district court erred in two ways when it granted JNOV to Bauer on the issue of qualified immunity. McGee initially argues that Bauer waived the issue by raising it for the first time in his motion for directed verdict. In addition, McGee argues on the merits that Bauer is not entitled to qualified immunity.

It is somewhat unusual for qualified immunity to be granted at the JNOV stage, since the decisions of the Supreme Court "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, —— U.S. ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam). However, given the procedural history of this case, we cannot agree that Bauer waived his qualified immunity defense. McGee went to trial on his fifth amended complaint. His initial complaint included 15 named and 50 unnamed "Doe" defendants, as well as four unindicted coconspirators.[4] On his way to the fifth amended complaint, McGee alternately withdrew and added defendants. For example, the Village was missing as a defendant in the first through fourth amended complaints, but reappears in the fifth amended complaint. Having been the cause of this shifting litigation, McGee may not now claim waiver on the part of Bauer.

■ Indeed, Bauer has throughout the litigation raised some sort of immunity defense. Although perhaps not artfully pleaded,[5] all defendants in this case raised the defense of "good faith" immunity at least as early as in their answer to the second amended complaint. In addition,

**4.** The named defendants were: Village of Lombard; County of DuPage; Rita Elsner, Village Attorney; George Seagraves, Village Fire Chief; John Corbley, former Village Fire Chief; Bauer; Bieniasz; William Hogan, Village Chief of Police; Betty Lenz, Assistant Administrator for DuPage County Animal Control Department; Dr. John McCasslin, former Administrator for DuPage County Animal Control Department; Dr. David Boyle, Administrator for DuPage County Animal Control Department; Carolyn Kulie; Raymond A. Murphy; Dr. David Bromwell; and Lombard Jaycees.

The unsued co-conspirators were Dr. David Doby, Director of the State of Illinois Department of Agriculture, Division of Meat, Poultry and Livestock Inspection; Linda Piezinski, former Director of the Misdemeanor Division of the DuPage County State's Attorney's Office; J. Michael Fitzsimmons, former Director of the DuPage County State's Attorney's Office; and James E. Ryan, Director of the DuPage County State's Attorney's Office.

**5.** The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, (1982), changed the focus of qualified immunity from an inquiry into the public officer's subjective "good faith" belief that his conduct was lawful to an objective reasonableness standard. See *Polenz v. Parrott*, 883 F.2d 551, 553–554 (7th Cir.1989).

this Court has specifically held in *Rakovich v. Wade*, 850 F.2d 1180, 1204 (1988) (en banc), certiorari denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534:

> Although the purpose of an objective qualified immunity inquiry is to avoid unnecessary burdens on government officials by more frequent use of the summary judgment tool, this does not inhibit the officers' ability to raise the immunity defense at a latter stage of the proceedings.

This rule is sensible. A determination of qualified immunity depends on the particular facts of each case. *Id.* at 1180. It was therefore reasonable, especially in a case such as this with much conflicting evidence over a myriad of circumstances in McGee's house, for Bauer to wait until the directed verdict stage before making his qualified immunity claim.

■ We turn next to the question of whether Bauer was entitled to qualified immunity under the circumstances of this case. Our review of the district court's decision to enter JNOV for Bauer on the qualified immunity issue is *de novo. Henderson*, 940 F.2d at 1057. The jury's verdict against Bauer means, however, that deference must be given to McGee's version of the facts that relate to Bauer when supported by the evidence. *Id.*

In his complaint, McGee claimed that Bauer violated McGee's due process rights by posting his home as uninhabitable and by not providing him with a predeprivation or immediate postdeprivation hearing. McGee thus presents a Fourteenth Amendment procedural due process claim: Did Bauer deprive him of property without due process of law? Under the doctrine of qualified immunity, Bauer is liable under Section 1983 if his actions violated a clearly established right of McGee's in July 1984 of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738. The right at issue must not be phrased too generally—qualified immunity would be a tenuous shield if a plaintiff could simply say that she has a general, yet clearly established, right to "due process." See *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986). Therefore, it is important to review carefully Bauer's role in this case in order to generate a sufficiently particularized right of McGee's that was allegedly violated.

Bauer's actions in this case are virtually undisputed. This is fortunate, because the jury's verdict against Bauer resolves few factual questions. The jury was instructed that McGee should prevail as against Bauer if he proved:

1. The existence of a property interest.
2. A deprivation of that property interest.
3. That the alleged deprivation occurred without due process of law.
4. That defendant Bauer acted under color of authority.
5. That the acts and conduct of defendant Bauer were the proximate cause of injury and damage to the plaintiff.

Defendants' Instruction No. 16A (cited at Tr. 815). Although certainly an accurate statement of law, this instruction essentially asked the jury to decide what process McGee was due in regards to the alleged deprivation. What process is due under the Constitution is a legal question that the judge should resolve. The judge then should put to the jury any factual questions relating to the application of that standard. The jury's conclusion that McGee did not receive "due process of law" does not inform our analysis of what process was due.

■ Bauer posted a sticker on McGee's front door with the following language:

> Important—no building or structure or portion thereof shall be used or occupied until all the provisions of the building code have been complied with and a certificate of occupancy issued by appointed building official as provided by the law.

Bauer placed a similar sticker on McGee's back door. In attaching these stickers, Bauer does not dispute that he deprived McGee of a property interest and that he acted under color of state law. At trial, Bauer confirmed that the stickers meant McGee was not permitted to eat, sleep or run his business in his house. McGee was deprived of the use of a substantial proper-

ty interest—his house. As this Court has noted, "[if] the state prevents you from entering your house, it deprives you of your property right even if the fee simple remains securely yours." *Polenz v. Parrott*, 883 F.2d at 557, quoting *Reed v. Village of Shorewood*, 704 F.2d 943, 948–949 (7th Cir.1983). McGee's inability to use his home for seven days amounts to a constitutionally significant deprivation. *Fuentes v. Shevin*, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 ("The Fourteenth Amendment draws no bright lines around three-day, 10–day or 50–day deprivations of property. Any significant taking of property is within the purview of the Due Process Clause.").

On appeal, the parties dispute vigorously whether a health emergency existed in McGee's house. It is true that the jury's verdict against Bauer indicates that McGee's house was in fact habitable and that no health emergency existed. Some evidence supports this interpretation. McGee was allowed back into his house seven days after being arrested even though the conditions inside the house had not changed since the time that he had been barred from his house. Indeed, the dead dog in the basement had not even been removed. In addition, McGee did not receive notice of any violations of village ordinances until August 9, almost two weeks after being allowed back into his house. If these violations were the reason the house had been declared uninhabitable, then presumably McGee would not have been allowed back into the house until they were corrected.

Notwithstanding this interpretation of the jury's verdict, we conclude that Bauer cannot be liable for the mere act of attaching stickers to McGee's house. It is undisputed that there were an extraordinary number of animals in the house, the house smelled terrible and was very dusty, one dog and several birds were dead, several of the dogs were sick, and raw sewage was in the basement. McGee disputes the presence of animal waste, rats, and electrical cords running through hay on the back porch. Considering only the undisputed facts, however, Bauer's decision to declare McGee's house uninhabitable was not objectively unreasonable. We also note that the Illinois Appellate Court justified the warrantless search that took place because of the exigent circumstances. *People v. McGee*, 140 Ill.App.3d at 681–682, 95 Ill. Dec. at 222–223, 489 N.E.2d at 442–443.

McGee's procedural due process claim, however, does not rely only on Bauer's decision to post the stickers on McGee's house without a prior hearing. McGee also attacks Bauer's failure to give him a prompt postdeprivation hearing. Bauer does not respond explicitly to this argument, apparently believing that if Bauer was not liable for the initial decision to post the stickers then he could not be liable for any later failure to provide adequate process.

McGee asserts, citing Bauer's testimony for authority, that under Village ordinances McGee was entitled to a hearing to contest the posting of his house "if so requested." Tr. at 462. Surprisingly, neither party cites the relevant ordinance. Our independent research of Illinois and Village law reveals no rules expressly covering the situation at McGee's house.[6]

---

**6.** Chapter 9.24 of the Village ordinances sets forth elaborate procedures, including notice requirements and chance to repair, that must be followed before the Village can act to demolish or repair dangerous or abandoned buildings. This ordinance tracks the language of Illinois Revised Statutes chapter 24, paragraph 11–31–1. The Village did not act pursuant to these procedures, however, because of the perceived emergency situation. Cf. *Turpen v. City of St. Francisville*, 145 Ill.App.3d 891, 897, 99 Ill.Dec. 616, 620, 495 N.E.2d 1351, 1355 (5th Dist.1986) ("While section 11–31–1 provides that the 'corporate authorities of each municipality may de-

molish * * * dangerous and unsafe buildings,' nothing prohibits actions taken by [village officials] in an emergency situation.").

Village ordinance Section 15.14.030, entitled "Emergency Measures," would apply to our case only by analogy. It empowers the Village Fire Chief to post stickers prohibiting entry into buildings deemed in "actual and immediate danger of failure or collapse." On its face, the ordinance applies only to structural problems in a building. In addition, the sticker prescribed under Section 15.14.030 contains language different from that of the stickers placed on McGee's house.

Faced with no contrary evidence (and realizing that the relevant Village ordinances may have been amended since 1984), we assume that Bauer's description of the Village's policy—McGee was entitled to a hearing if he requested one—is accurate.[7]

We are somewhat troubled by the fact that McGee did not receive an immediate hearing. In some respects, the facts in *Tavarez v. O'Malley*, 826 F.2d 671 (7th Cir.1987), are similar. In *Tavarez*, county officials barred the proprietors of a grocery store from their store for four weeks after a gas heater in the store malfunctioned and gave off carbon monoxide. As in the case before us, seals were placed on the door prohibiting any use of the premises. The placement of the seals without a notice and hearing was not a problem—the malfunctioning heater constituted an emergency. *Id.* at 674, citing *Board of Regents v. Roth*, 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 2705 n. 7, 33 L.Ed.2d 548 (1972).

What was constitutionally problematic in *Tavarez* were the "inexplicable bureaucratic delays" after the store was sealed. *Id.*

> [T]o keep out the Tavarezes and the landlord—the people with the strongest interest in [fixing the store]—was not only unreasonable but stupid * * *. [T]here was no reason not to give the Tavarezes a prompt opportunity to show that they were entitled to reenter the premises because the emergency had passed * * *.[8]

*Id.* at 674–675. Similarly, even if the conditions in McGee's house amounted to an emergency, and even if the house was truly uninhabitable, McGee should have been allowed to enter the house and fix what was broken or clean what was too dirty.[9]

There are significant differences, however, between the Tavarezes and McGee. The Tavarezes, unlike McGee, asked on numerous occasions when and how they could get back into the store. McGee never testified that he or his attorney asked similar questions of Village officials; his only testimony regarding inquiries concerned the status of his animals. In addition, McGee had a right to a hearing before the Village officials, whereas the Tavarezes apparently had no such right.

Indeed, McGee at the same time asserts that he had a right to a hearing and complains that he received no hearing. McGee apparently contends that the Village should have automatically provided him with a hearing, or at least should have provided him notice of his right to a hearing. We doubt that the Village must automatically initiate a hearing in these circumstances—in many cases the facts will be uncontested and a hearing would be moot.

More problematic in this case is the fact that McGee apparently received no notice of his right to a hearing. This Court squarely addressed the issue of when notice of a hearing is required in *Wilson v. Health & Hospital Corp. of Marion County*, 620 F.2d 1201 (1980). The plaintiff in *Wilson* had received notices that his apartment houses had several health code violations, some of which were labeled as "emergency" violations that had to be fixed within 10 days. Under the ordinance authorizing the health official to take such action, the plaintiff had the right to a hearing to contest the violations. As here, the plaintiff in *Wilson* was not informed of this right to a hearing (although he was given a telephone number he could call if he had any questions). We concluded that this was a violation of due process:

> When the individual fails to exercise the fundamental procedural right to a hearing granted to him under the ordinance and required by due process because he was not informed of that right by the government authorities, we do not be-

---

7. We note that Bauer's testimony could be considered a self-serving post-hoc rationalization. Cf. *Alexander v. Polk*, 750 F.2d 250, 256 (3d Cir.1984). Or it could reflect confusion over the content of Village ordinances. McGee does not advance either contention.

8. *Tavarez* concluded that the failure to give the Tavarezes some kind of hearing shortly after their premises were sealed denied them due process. 826 F.2d at 675.

9. The sticker described in Village ordinance Section 15.14.030, dealing with buildings in danger of failure or collapse, provides on its face that the owner is allowed in for the purposes of repairing the building.

lieve it is adequate for the government simply to rely upon the time worn adage that 'ignorance of the law is no excuse.' * * * [P]ersonal notice is required and will not impose an unreasonable burden upon the appellees.

*Id.* at 1215. Notice here also would have been inexpensive for the Village to provide (it could easily be printed on the stickers used at the house) and would benefit persons pushed out of their homes who, like McGee, are understandably reluctant to press their case given the unambiguous wording of the stickers and the warnings of various local officials. See also *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14–15, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978) (holding that due process requires notice of the possibility of an administrative hearing before shutting off utility service).

Notwithstanding *Wilson*, it is unclear why Bauer in particular should be penalized for the Village's failure to give notice to McGee of his right to a hearing. Bauer was the building inspector, not the Village attorney. He undoubtedly was not responsible for the content of the stickers, and could reasonably assume that he was not the official designated to advise McGee of his legal right to a hearing. Presumably, Bauer would be a witness in, not the arbiter of, any hearing that was held. It must also be recognized that McGee was under criminal investigation and that the condition of the house was considered evidence in the cruelty to animals charge against McGee.

Our conclusion is that the district court correctly ruled that Bauer is qualifiedly immune from liability. McGee cites no case indicating that a building inspector or other similar official must provide notice of a right to a hearing. In addition, as concluded above, Bauer's initial decision to attach the stickers is not constitutionally problematic. Bauer is hence protected by qualified immunity.

McGee is also not entitled to prevail against the Village of Lombard because he failed to properly preserve his right to file a JNOV motion under Rule 50. The judgment of the district court is affirmed.