Richard FITZPATRICK and Dorothy Fitzpatrick, Plaintiffs–Appellees,

v.

CITY OF DEARBORN HEIGHTS, a municipal corporation, Edward D. Opalewski, individually and in his capacity as Director of the City of Dear-

born Heights Building Department, and Peter Simakas, individually and in his capacity as Ordinance Officer for the City of Dearborn Heights, Defendants–Appellants.

No. 03–1180.

United States Court of Appeals, Sixth Circuit.

July 15, 2004.

Rehearing En Banc Denied Sept. 17, 2004.

Before: SILER, COLE, and ROGERS, Circuit Judges.

SILER, Circuit Judge.

In this civil rights action arising out of the city's condemnation of plaintiffs' home, individual defendants Edward Opalewski and Peter Simakas take this interlocutory appeal from an order of the district court denying them qualified immunity. We affirm.

## BACKGROUND

Ordinance Officer Simakas was contacted in March 1997 by a neighbor of the Fitzpatricks, who were at that time staying at their seasonal home in Florida, regarding broken windows at the Fitzpatricks' home. Simakas and Building Inspector Ken Lamontagne went to the residence, where they confirmed that

many windows of the Fitzpatricks' home had been broken, apparently by a fallen tree limb. Curtains hung out of a bedroom window and assorted bedroom articles littered the surrounding grounds. Having determined that no one was home, Lamontagne called a contractor to have the windows boarded and Simakas called the Department of Public Works to have the tree limb removed. Lamontagne decided to tag the Fitzpatricks' home for emergency condemnation, and a condemnation placard signed by Simakas was posted on the Fitzpatricks' home.

After returning from Florida to find their home condemned, the Fitzpatricks attempted to initiate an appeal of the city's condemnation decision. Upon visiting Simakas at the city's building department, the Fitzpatricks were served with a notice that the city intended to demolish their home unless the homeowner paid $200 for an appeal to the Demolition Board of Appeals within 30 days. The letter did not list the building conditions justifying condemnation, nor did the proposed hearing offer an attempt to challenge the condemnation decision itself. Instead, the hearing merely offered a means by which to challenge the findings of an inspection by Opalewski (acquiescence to which was a condition of obtaining the hearing) in which Opalewski listed every "deficiency" the home possessed, even those unrelated to the question of habitability.

This process—standard procedure, as conceded by the mayor—is very different from the one ostensibly prescribed by the controlling city ordinance, § 7–485 (relating to "emergency" condemnations). Under § 7–485, a person contesting an emergency condemnation is entitled to petition the mayor for a hearing, which is to be afforded "as soon as possible." The city has attempted to justify its actions by relying on §§ 7–701 and 7–702, which establish and pertain strictly to the Demolition Board of Appeals. The district court below rejected these justifications, however, and granted the Fitzpatricks' motion for summary judgment on the question of post-deprivation lack of due process.

This appeal deals only with the narrow question of the district court's denial of Opalewski's and Simakas's claim of qualified immunity.

## STANDARD OF REVIEW

We review *de novo* a district court's denial of qualified immunity. *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir. 1996).

## DISCUSSION

A qualified immunity analysis requires a two-step process. "As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff[s], establishes that 'the officer's conduct violated a constitutional right.'" *Cherrington v. Skeeter,* 344 F.3d 631, 636 (6th Cir.2003) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* (quoting *Saucier,* 533 U.S. at 201).

The district court correctly concluded that the Fitzpatricks suffered a constitutional violation. As it relates to emergency displacements of persons from their homes, due process requires at a minimum timely review of the administrative decision. "[F]undamental fairness requires notice in short order of the right to an administrative hearing, including the manner designated for obtaining timely review." *Flatford v. City of Monroe,* 17 F.3d 162, 169 (6th Cir.1994). Stated generally, there is a requirement of "immediate and meaningful postdeprivation process." *Id.*

In the instant case, the Fitzpatricks' post-deprivation process was neither immediate nor meaningful. In fact, because the only hearing obtainable addressed not the city's condemnation decision itself but Opalewski's inspection checklist, the Fitzpatricks in effect received no meaningful postdeprivation process at all.

■ The right to meaningful postdeprivation process—especially in emergency situations where predeprivation process is all-but-impossible—has been clearly established for some time. See Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Flatford, 17 F.3d 162. "[T]he relevant, dispositive inquiry in determining whether a constitutional right is clearly established is whether it will be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1997). A reasonable person would find it objectively unreasonable to require the Fitzpatricks to pay $200 to obtain a hearing to which they are statutorily entitled, only to deny them in that hearing the opportunity to challenge the condemnation decision. A reasonable person would also find it objectively unreasonable to provide a hearing before the Demolition Board of Appeals when the governing city ordinance plainly provides for a hearing before the mayor.

Because the Fitzpatricks' postdeprivation due process rights were violated (at least, looking at the facts in the light most favorable to the Fitzpatricks), and because those rights were clearly established, Opalewski and Simakas are not entitled to qualified immunity.

**AFFIRMED.**

ROGERS, Circuit Judge, concurring in part and dissenting in part.

In this case, the district court found that Director Opalewski and ordinance officer Simakas were entitled to qualified immunity for their pre-condemnation actions, but denied them qualified immunity for flaws in the post-condemnation administrative procedures. Such a case comes close to being a paradigm case for qualified immunity.

The core underlying purpose of the official immunity doctrines is to encourage the vigorous enforcement of the law. See Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949) (Learned Hand, J.). Vigorous enforcement of city procedures will certainly be deterred if officials may be subjected to individual capacity civil suits based on flaws in post hoc administrative procedures available to challenge their actions. Only in situations where the official is himself the person who denies the legally-required post hoc procedures is official immunity arguably not applicable. See Flatford v. City of Monroe, 17 F.3d 162, 169 (6th Cir.1994) (defendant, the city's Director of Building and Safety, did not give adequate notice of available post-condemnation procedures); but see McGee v. Bauer, 956 F.2d 730 (7th Cir.1992) (holding that the ordinary building inspector who deemed a house uninhabitable was entitled to qualified immunity from a suit by the plaintiff alleging that the building inspector had failed to give adequate notice of the post-deprivation proceedings). In Flatford, the court noted that the individual defendant director was "not merely a building inspector but the highest official in the City's Building Safety Department, vested with statutory duties of commencing proceedings against those responsible for dangerous structures." Flatford, 17 F.3d at 169 n. 7.

In the instant case, there is not sufficient evidence that the asserted flaws in the post-condemnation procedure can be attributed to Simakas. Simakas, an ordinance officer, did not have the statutory

authority to order the Fitzpatricks' house condemned and was not responsible for the post-condemnation procedures that were in place. The simple act of informing the plaintiffs of the fee and the time of the next Demolition Board of Appeals meeting was not necessarily unreasonable and did not deny the plaintiffs a constitutionally valid post-condemnation procedure. The plaintiffs have not presented evidence that Simakas was responsible for any of the appeals procedures that the district court determined clearly violated the plaintiffs' due process rights. Simakas should therefore be immune from the suit because he simply informed the Fitzpatricks of the post-condemnation proceedings, even if these proceedings were constitutionally deficient. There is insufficient evidence that Simakas had power to affect the Dearborn Height's condemnation policy. Indeed, the district court noted that it was unclear regarding Simakas's role. I would therefore reverse the denial of qualified immunity as to Simakas.

While the issue is close with respect to Opalewski, there is arguably sufficient evidence for a reasonable juror to conclude that defendant Opalewski was the policy-maker who determined that the post-condemnation procedure would have the legal flaws challenged by plaintiffs. Opalewski, like the defendant in *Flatford,* was the Director of the Department of Building and Engineering. Unlike Simakas, Opalewski did have the authority to condemn buildings. Opalewski also instituted at least one policy that the Fitzpatricks have challenged—the policy of requiring inspections of condemned houses prior to a hearing and making this inspection report the subject of the hearing. While Opalewski may not have been responsible for every constitutionally deficient procedure in this case, there is sufficient evidence that he was responsible for some of the violations. Thus, the district court correctly denied

him qualified immunity. I therefore concur with respect to defendant Opalewski.