Ija WILSON, Plaintiff,

v.

The CITY OF NEW YORK, the New York City Police Department, and Police Officer J. Clifford, Shield No. 25100, Defendants.

No. 90 CV 3983.

United States District Court, E.D. New York.

Sept. 4, 1992.

Eugene Bogan, New York City, for plaintiff.

O. Peter Sherwood, Corp. Counsel City of New York, (Deborah A. Bryant, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Ija Wilson brought this action against the City of New York, the New York City Police Department, and Police Officer Joseph Clifford pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, seeking compensatory and punitive damages for false arrest, use of excessive force, and malicious prosecution. Defendants move for summary judgment.

### I.

For purposes of this motion the court treats as true the sworn deposition testimony of plaintiff and resolves all ambiguities and draws all reasonable inferences in her favor. *Montana v. First Federal Savings & Loan Assoc.*, 869 F.2d 100, 103 (2d Cir. 1989).

Plaintiff is a 52 year old woman, slightly over five feet tall with a hunchback. She lives in an attached house on Cherry Avenue in Flushing, New York, which has a driveway immediately adjacent to that of her neighbor.

On November 19, 1989 plaintiff's friend Inna Solomone drove to plaintiff's house to visit, and parked her car in the street across the entrance to the driveway. The car partially blocked the driveway of plaintiff's neighbor, but with his consent.

Another of plaintiff's neighbors, Mr. Gandi, came to plaintiff's house to tell her that he had called the police to complain that a car was blocking his own driveway. He wished to warn plaintiff that the police "in their enthusiasm" might ticket the car of plaintiff's friend.

Defendant Joseph Clifford and his partner, Officer James Duckham, responded to the complaint of a blocked driveway on Cherry Avenue and parked their car approximately 20 feet from plaintiff's house. Officer Clifford began issuing a summons to a car parked there.

Plaintiff, accompanied by Solomone, approached the patrol car, bent over toward Clifford, pointed toward Solomone's car, and explained that it belonged to her friend who had parked in front of her driveway with her permission.

According to plaintiff, Clifford did not respond. Plaintiff repeated her explanation. After a pause, Clifford told her that it was against the law to park in front of a driveway. Plaintiff informed Clifford that that law had been lifted several years earlier. Plaintiff's tone was, according to Solomone, "very cutesy, cute, very polite" and "very apologetic." Clifford took offense and asked plaintiff whether she was trying to teach him the law.

Plaintiff grew frustrated and annoyed. She told him she was not trying to argue with him. She merely wanted to "talk to him" and "inform him about something," but he was "on some kind of ego trip."

According to Clifford, plaintiff said "you [expletive deleted]—you better not give this car a ticket."

Solomone, not wanting to create any problems, announced that she would move her car and walked towards it. Concerned that Solomone would not find a spot nearby and would have to walk back to the house alone at night, plaintiff walked toward her and yelled to her not to move the car. Plaintiff admits that as she walked away from Clifford, she muttered an obscenity.

Solomone got into her car, and as she pulled away Clifford approached her and said he "could arrest" plaintiff for "pulling the law on me" and using obscenities. Solomone then drove away.

As plaintiff walked back to her house, Clifford yelled after her that she could get arrested for what she had done. According to Clifford, plaintiff turned around, made an obscene gesture, and shouted additional obscenities. Clifford also says in his affidavit that at this point he told plaintiff she was under arrest, and that by this point "a crowd of approximately 5 or 6 people gathered nearby."

Plaintiff then entered her house and told her husband that "the cops are outside." Her husband, a black Jamaican–American, walked outside the house. Fearful and "panicked" that her husband "was taking a

chance walking out there" with the police, plaintiff followed him.

Plaintiff's husband asked the police officers what had happened. Clifford got out of the car, pointed to plaintiff, and said she had been very rude. Plaintiff's husband identified the woman as his wife, and asked plaintiff to tell him what happened. While relating what had happened, plaintiff repeated the obscenity she had stated when she had walked away from Clifford's car. At that point, Clifford announced "that's it" and said that he was going to "teach her a lesson."

Clifford does not mention this conversation in his affidavit. He says that he tried to arrest her immediately after she reappeared outside.

When Clifford went to arrest plaintiff, Clifford's partner Officer Duckham said "you can't be serious." But Clifford reached toward plaintiff and grabbed her sweater. She panicked and started running up the stairs to her house. Clifford ran after her, grabbed her by the sweater, and dragged her down the stairs.

At this point, plaintiff's daughter had walked outside and was crying, and several neighbors had gathered in front of the house.

Clifford had trouble handcuffing plaintiff. He says she was resisting arrest. At one point he "raked" her arm against the brick stoop. Clifford insists that plaintiff was scraped because she pressed her body against the stoop while resisting arrest.

According to plaintiff and Solomone, who had reparked her car and returned, Clifford had plaintiff against a brick wall and was twisting her arm, trying to force it behind her back. At her deposition Solomone described the scene as "really horrible." She said the following:

> Because, okay, Ija is deformed. She has a hump back, and he was pulling her arms behind her. She was saying, 'He's hurting me....' And I said, 'Look, can't you see her hands can't do that? What are you doing to her? ...' And he just kept, I don't know, ... twisting, twisting her hands behind her and her hands wouldn't go that way.... And I went

hysterical. [I said] 'Please let go of her. What are you doing to her? ...' He said, 'Oh, I'll teach her a lesson.'

Plaintiff testified at her deposition that while Clifford was handcuffing her, Officer Duckham walked upstairs, stood beside them, and "said in a very low voice, you are not going to do this are you or you are not going through with this, are you." Officer Clifford said nothing, and called for a backup. Several more police cars then arrived.

Clifford stated in his affidavit that throughout the incident plaintiff's husband was "peaceful and cooperative." He did not try to interfere with the attempt to arrest plaintiff. When he saw that additional police officers had arrived, plaintiff's husband said to Solomone "thank God" and greeted the officers with relief. He pointed out what Clifford was doing to his wife, but then fell silent when one of the policemen approached him with a stick. After that point he could not see everything that happened to his wife because, as he explained at his deposition, he was "busy trying to take care of [him]self" upon being "surrounded" by a number of police officers with nightsticks.

When Clifford was finally able to put the handcuffs on plaintiff, he dragged her into a car and drove her to the precinct. By this time, according to plaintiff, she was bleeding all over her wrists and arms. Her husband recalled that her lip was also bleeding.

In spite of her injuries plaintiff declined an offer of medical treatment from "two EMS guys" who were "making fun" of "some poor black woman ... who was busted for prostitution." Plaintiff was afraid to go with them to the hospital.

Clifford issued plaintiff a summons for disorderly conduct and told plaintiff he would release her after seeing her identification. When Solomone brought plaintiff's driver's license to the precinct, plaintiff was allowed to leave. The summons was eventually adjourned in contemplation of dismissal.

Plaintiff went home that evening and took photographs of her wrists and bruises.

Her hands were swollen and her hands and arms were covered with "huge patches" of "black and blue." The next day she saw her own doctors, who took x-rays but found no broken bones, and prescribed aspirin and Ben–Gay.

The complaint states claims for violations of plaintiff's civil rights based on false arrest, excessive force, and malicious prosecution, and alleges that the City of New York failed to train and supervise adequately their employees. It demands judgment against the defendants in the amount of one million dollars plus costs and reasonable attorneys' fees.

## II.

Plaintiff's claims are governed by 42 U.S.C. § 1983, which provides in pertinent part that:

[e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State ..., subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To state a § 1983 claim against Clifford plaintiff must allege that acting under color of state law he deprived her of a federal right.

■ To prevail on a § 1983 claim against New York City for acts committed by Clifford, plaintiff must show that those acts were pursuant to an official policy or custom. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978). Plaintiff must also establish a "causal link" between the official policy or custom and her injuries. *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983).

Plaintiff has neither identified a specific municipal policy, custom or usage that was inadequate, nor shown how that policy, custom or usage caused the alleged constitutional violation. The § 1983 claim against New York City is dismissed.

■ The court also dismisses the claims against the New York City Police Department, which cannot be sued independently because it is an agency of the City of New York. *See* New York City Charter, Chapter 16, § 396; *Martin v. City of New York,* 627 F.Supp. 892, 894 n. 2 (E.D.N.Y.1985).

The court will therefore discuss the various section 1983 claims against defendant Clifford.

### A. False Arrest.

■ Clifford argues that there was probable cause to arrest plaintiff and therefore seeks summary judgment on the claim for false arrest.

The court assumes that plaintiff invokes the Fourth Amendment as the constitutional or federal right that Clifford violated when he falsely arrested plaintiff under color of state law. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The issue is whether Clifford reasonably believed he had probable cause to arrest her.

Plaintiff was arrested for disorderly conduct pursuant to New York Penal Law § 240.20(3), which states that:

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... in a public place, he uses obscene language, or makes an obscene gesture.

Plaintiff says she neither intended to cause public inconvenience, nor used obscene language in a public place. Plaintiff "muttered" an obscenity in front of her house and in the presence of two police officers. She testified that she did not intend for them to hear her.

Plaintiff's evidence suggests that it was not her conduct but Clifford's response to it that caused the public disturbance, and that Clifford had no reason to believe that plaintiff posed any threat to the safety of him or others. Plaintiff and Solomone both say they heard Clifford's partner caution Clifford against arresting plaintiff. A jury will decide whether a prudent person would have believed there was probable cause to arrest her for disorderly conduct.

## B. Excessive Force.

■ Clifford also seeks summary judgment on the claim for excessive force. Plaintiff's claim that he violated her Fourth Amendment rights by using excessive force is analyzed under a "reasonableness" standard which depends on an objective evaluation of when the seizure was made and how it was carried out. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). "Proper application" of the standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396–97, 109 S.Ct. at 1871–72.

Plaintiff's version of the facts precludes summary judgment. Officer Clifford was confronted with an unarmed petite woman who in front of her own home muttered an obscenity after having a minor disagreement with a police officer. Clifford decided to arrest her, not because she posed any threat to his safety or to that of the public, but to "teach her a lesson." He then had trouble handcuffing her.

Clifford attributes the trouble to plaintiff's resisting arrest. Plaintiff and others say the trouble was caused by Clifford's persistent attempts to twist her arms despite her physical limitations. A jury will determine based on these and other facts whether it was reasonable for Clifford to respond to the "threat" he faced with the force that he did.

Clifford also says that plaintiff has failed to show that she suffered a significant injury. But "if the force used was unreasonable and excessive, [she] may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir.1987). The jury will consider the extent of her injuries in determining whether the force used was excessive and in calculating the amount of damages, if any, to which she is entitled.

## C. Malicious Prosecution.

■ Plaintiff's claim of malicious prosecution brought under section 1983 is governed by state law in the absence of federal common law. *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir.1989) (citations omitted). To prevail plaintiff must establish that (1) the defendant either commenced or continued a criminal proceeding against her; (2) the proceeding terminated in her favor; (3) there was no probable cause for the criminal proceeding; and (4) the criminal proceeding was instituted in actual malice. *Id.*

■ Plaintiff's criminal prosecution was adjourned in contemplation of dismissal. Such a disposition bars recovery for malicious prosecution because the criminal proceeding was not terminated in her favor. *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980); *Hollender v. Trump Village Coop., Inc.*, 58 N.Y.2d 420, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983). The claim for malicious prosecution is dismissed.

## D. Clifford's Defense of Qualified Immunity.

■ Whether Clifford has a defense of qualified immunity for the claims against him for false arrest and excessive force depends upon whether it was objectively reasonable for him to have believed that probable cause existed, or whether officers of reasonable competence could disagree on whether the probable cause test was met. *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987).

Plaintiff invokes rights that are clearly protected under federal law. Clifford is entitled to summary judgment only if it was objectively reasonable for him to believe that his acts did not violate those rights. Plainly this is an issue of fact for the jury. *Id.*

If plaintiff, her husband, and her friend are telling the truth, no reasonable officer in Clifford's position would have believed his actions were justified under the United States Constitution. Clifford announced that he was arresting her "to teach her a lesson" for trying to "teach him" the law and for using an obscenity. According to

plaintiff, she muttered an obscenity once as she walked away from Clifford, and then repeated it as she was recounting the events to her husband. Clifford was not threatened physically by the middle-aged woman with a physical disability, yet he used excessive physical force to handcuff her and drag her into a police car. He did not hesitate even though both plaintiff's friend and another police officer suggested that his action were inappropriate.

The record fails to establish that Clifford is entitled to qualified immunity.

### III.

In addition to stating claims under section 1983, the complaint invokes 42 U.S.C. §§ 1985, 1986. Section 1985 provides a claim against those who conspire to interfere with civil rights. Section 1986 provides a claim against those who know that wrongs are about to be committed in furtherance of such a conspiracy but fail to take action to prevent the wrongful acts.

Plaintiff invokes these provisions without providing any details about the alleged conspiracy. She does not say who the conspirators were or what they agreed to do. These claims are dismissed.

### IV.

The claims against the City of New York and the Police Department are dismissed. Clifford's motion for summary judgment is granted, except as to the claims for false arrest and use of excessive force.

So ordered.